**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

_____

BRENT NICKISCHER,                             :
               Plaintiff,            :
                           :
               v.                      :        Civil No. 5:24-cv-04748-JMG
                           :
PATIENT FIRST PENNSYLVANIA MEDICAL   :
GROUP, PLLC,                                  :
               Defendant.            :

_____

**MEMORANDUM OPINION**

**GALLAGHER, J.**                                                **January 12, 2026**

## I.    OVERVIEW

Plaintiff Brent Nickischer brings claims for discriminatory discharge, retaliation, and failure to accommodate under the Americans with Disabilities Act ("ADA") against Defendant Patient First Pennsylvania Medical Group, PLLC, arising from the termination of his employment after he requested a permanent reduction in hours as an accommodation. Plaintiff and Defendant (together, the "Parties") have filed cross-motions for summary judgment. Because Defendant articulated a legitimate, nondiscriminatory reason for terminating Plaintiff's employment—his inability to meet the schedule requirements—and Plaintiff failed to address pretext, the Court will grant summary judgment on discriminatory discharge and retaliation in favor of Defendant. But because genuine disputes of material fact remain as to Defendant's good faith and whether Plaintiff's requested accommodation would impose an undue hardship, the Court denies summary judgment on the failure-to-accommodate claim and request for punitive damages.

## II.    BACKGROUND

Plaintiff is a board-certified internal medicine physician. *See* Statement of Undisputed Facts in Supp. of Pl.'s Mot. for Partial Summ. J. ("Pl.'s SUF"), ¶ 1 (ECF No. 35-1); Def.'s Statement of Disputed Material Facts ("Resp. Pl.'s SUF"), ¶ 1 (ECF No. 41). He began working for Defendant as a part-time physician at Defendant's urgent care facility in Easton, Pennsylvania on or about June 5, 2018. *See* Pl.'s SUF, ¶¶ 5, 7 (ECF No. 35-1); Resp. Pl.'s SUF, ¶¶ 5, 7 (ECF No. 41). This part-time work allowed him to maintain an active clinical practice. J.A. at 145-46 (ECF No. 36).

The Parties executed an Employment Agreement at the inception of Plaintiff's employment. J.A. at 192-204 (ECF No. 36); Def.'s Statement of Undisputed Material Facts in Supp. of Mot. for Summ. J. ("Def.'s SUF"), ¶ 4 (ECF No. 34); Pl.'s Resp. to Def.'s Statement of Undisputed Material Facts ("Resp. Def.'s SUF"), ¶ 4 (ECF No. 39). Between June 2018 and September 2022, part-time physicians like Plaintiff were expected to work 28 weekend hours during months with eight weekend days and 35 weekend hours during months with nine or ten weekend days. Def.'s SUF, ¶¶ 6, 8 (ECF No. 34); Resp. Def.'s SUF, ¶¶ 6, 8 (ECF No. 39). On October 1, 2022, Defendant amended the schedule guidelines for all part-time physicians, changing the hours to 24 hours and 30 hours, respectively. Def.'s SUF, ¶¶ 7-8 (ECF No. 34); Resp. Def.'s SUF, ¶¶ 7-8 (ECF No. 39). Specifically, the amended schedule guidelines state:

> Physicians and extenders must work a 'full' schedule, which is based on the following precepts:
> . . .
>
> **Part-time (PT)**
> - 24 weekend hours for months with 8 weekend days
> - 30 weekend hours for months with 9 or 10 weekend days.
>
> **PRN**
> - 12 weekend hours for months with 8 weekend days
> - 18 weekend hours for months with 9 or 10 weekend days

J.A. at 209 (ECF No. 36). Plaintiff understood these requirements and knew that failing to meet them could be deemed a breach of the agreement. Def.'s SUF, ¶¶ 12-13 (ECF No. 34); Resp. Def.'s SUF, ¶¶ 12-13 (ECF No. 39).

Shortly after starting his part-time job with Defendant, Plaintiff began working full-time for Optum Services, Inc. ("Optum") as a medical director in December 2018. Pl.'s SUF, ¶ 13 (ECF No. 35-1); Resp. Pl.'s SUF, ¶ 13 (ECF No. 41). There, his hours were Monday through Friday, 8:00 a.m. to 4:30 p.m., as well as weekends once every few months. Pl.'s SUF, ¶ 14 (ECF No. 35-1); Resp. Pl.'s SUF, ¶ 14 (ECF No. 41). He also made himself available to direct reports from 7:00 a.m. to 6:00 p.m. Def.'s SUF, ¶ 20 (ECF No. 34); Resp. Def.'s SUF, ¶ 20 (ECF No. 39). Plaintiff worked for Optum exclusively from home, reviewing utilization management cases for patients who were hospitalized. Pl.'s SUF, ¶ 14 (ECF No. 35-1); Resp. Pl.'s SUF, ¶ 14 (ECF No. 41).

Plaintiff states that he has been suffering from low back pain since 2000. J.A. at 16 (ECF No. 36). He had an MRI in August 2000, which revealed a "moderate size central to paracentral disc herniation at L3-L4" and "disc bulging at L4-L5 and L5-S1." J.A. at 382 (ECF No. 36). After a car accident in November 2009, Plaintiff had another MRI. *Id.* at 67. That MRI revealed "[m]ild degenerative disk [sic] disease and mild posterior element degenerative change at L3-4, L4-5, and L5-S1," "[h]igh intensity zones in the midline of the posterior disk [sic] anulus at L3-4 and L4-5," and "[v]ery small central disk [sic] protrusion at L5-S1." *Id.* at 427. Plaintiff testified that he has low back pain daily and self-treats with naproxen sodium and home exercises. *Id.* at 18, 56-57, 69.

By late May 2023, Plaintiff states that his low back pain worsened, so he sought a reduced work schedule with Defendant. *See* Pl.'s SUF, ¶ 17 (ECF No. 35-1); Resp. Pl.'s SUF, ¶ 17 (ECF No. 41). Plaintiff engaged his colleague from Optum, Dr. Neil Morgenstern, for assistance. Pl.'s SUF, ¶ 17 (ECF No. 35-1); Resp. Pl.'s SUF, ¶ 17 (ECF No. 41). Dr. Morgenstern is a physiatrist.

J.A. at 338 (ECF No. 36). In layman's terms, a physiatrist seeks to "get patients to get back to their function where they were before." *Id.* Dr. Morgenstern and Plaintiff worked directly together at Optum at the time, but Plaintiff subsequently became Dr. Morgenstern's supervisor. Def.'s SUF, ¶ 26 (ECF No. 34); Resp. Def.'s SUF, ¶ 26 (ECF No. 39); J.A. at 339 (ECF No. 36).

Dr. Morgenstern reviewed the MRI reports from 2000 and 2009 and a report from a pain specialist dated January 15, 2010. Def.'s SUF, ¶ 27 (ECF No. 34); Resp. Def.'s SUF, ¶ 27 (ECF No. 39). Dr. Morgenstern met with Plaintiff via Zoom. J.A. at 347 (ECF No. 36). He asked Plaintiff for his medical history, primary complaints, and conducted an examination. J.A. at 350 (ECF No. 36). After the appointment, Dr. Morgenstern prepared a letter stating that Plaintiff could not work more than "a six-hour shift twice a month." Def.'s SUF, ¶ 29 (ECF No. 34); Resp. Def.'s SUF, ¶ 29 (ECF No. 39). To support that recommendation, Dr. Morgenstern specifically explained that Plaintiff suffered from disc herniation at L3-L4 and disc bulging at L5-S1, as supported by the 2000 and 2009 MRIs. J.A. at 219 (ECF No. 36). He further explained that Plaintiff's "pain radiates to the left foot accompanied with tingling of the left foot" and is "exacerbated by prolonged standing greater than six hours and lifting." *Id.*

On June 1, 2023, Plaintiff sent Defendant's Physician Relations Employment Manager, Karen Guldenschuh, the accommodation request prepared by Dr. Morgenstern. *See* Pl.'s SUF, ¶ 20 (ECF No. 35-1); Resp. Pl.'s SUF, ¶ 20 (ECF No. 41); J.A. at 223; Def.'s SUF, ¶ 31 (ECF No. 34); Resp. Def.'s SUF, ¶ 31 (ECF No. 39). Ms. Guldenschuh asked Plaintiff how long he needed the accommodation, to which he explained it was a permanent request and provided Defendant a supplemental letter from Dr. Morgenstern. Def.'s SUF, ¶¶ 33-34 (ECF No. 34); Resp. Def.'s SUF, ¶¶ 33-34 (ECF No. 39). Ms. Guldenschuh then forwarded the new letter to Defendant's Director of Physician Relations, Jane Green. J.A. at 222 (ECF No. 36).

Less than 24 hours later after receiving Plaintiff's request, Ms. Green emailed Ms. Guldenschuh: "I've discussed with Steve [McCoy] and Eddie [Sowers]. I'll be sending him a notice letter next week. ☺" J.A. at 222, 302 (ECF No. 36). On June 5, 2023, Ms. Green sent Plaintiff a letter advising that his employment has been terminated, effective August 3, 2023. *Id.* at 224. Defendant based this on Plaintiff being "unable to meet the schedule requirements," which Defendant deemed an "essential function" of Plaintiff's position. *Id.* For Plaintiff's final weeks working for Defendant, Plaintiff worked 12 hours per month. Pl.'s SUF, ¶ 30 (ECF No. 35-1); Resp. Pl.'s SUF, ¶ 30 (ECF No. 41).

The Parties now file cross-motions for summary judgment. Defendant moves for summary judgment on all of Plaintiff's claims and Plaintiff's request for punitive damages.[1] *See generally* Mem. of L. in Supp. of Def.'s Mot. for Summ. J. ("Def.'s Mem. L. Supp.") (ECF No. 37). Plaintiff moves for partial summary judgment as to discriminatory discharge and retaliation. *See generally* Mem. of L. in Supp. of Pl.'s Mot. for Partial Summ. J. ("Pl.'s Mem. L. Supp.") (ECF No. 35-2).

## III.    LEGAL STANDARD

Federal Rule of Civil Procedure Rule 56(c) provides that the district court must "grant summary judgment if there is no genuine issue as to any material fact and if the moving party is entitled to judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). Essentially, the Court must analyze "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of

---

[1] Twice the Court extended the page limit from twenty pages to thirty pages, and twice Defendant ignored the Court's Policies and Procedures. *See Policies and Procedures*, https://www.paed.uscourts.gov/sites/paed/files/documents/procedures/galpol.pdf (last visited Dec. 29, 2025) ("Opening briefs filed in support of and in opposition to a motion should be limited to twenty pages. **This includes the table of contents and any attachments or addenda.**" (emphasis added)).

law." *Id*. at 251-52. A genuine issue of fact exists where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. at 248. "A fact is material if it 'might affect the outcome of the suit under the governing law.'" *Physicians Healthsource, Inc. v. Cephalon, Inc.*, 954 F.3d 615, 618 (3d Cir. 2020) (quoting *Anderson*, 477 U.S. at 248). At this stage of litigation, all facts presented are viewed in the light most favorable to the nonmoving party. *Daniels v. City of Pittsburgh*, No. 22-1790, 2023 WL 2707178, at *2 (3d Cir. Mar. 30, 2023).

To survive a properly supported motion for summary judgment, the nonmoving party must present affirmative evidence of specific facts to demonstrate a genuine issue of material fact. *Anderson*, 477 U.S. at 256-57; *Berckeley Inv. Grp., Ltd. v. Colkitt*, 455 F.3d 195, 201 (3d Cir. 2006) (citing *Pa. Prot. & Advoc., Inc. v. Pa. Dep't of Pub. Welfare,* 402 F.3d 374, 379 (3d Cir. 2005)) ("Although the non-moving party receives the benefit of all factual inferences in the court's consideration of a motion for summary judgment, the nonmoving party must point to some evidence in the record that creates a genuine issue of material fact."). "[S]ummary judgment is essentially 'put up or shut up' time for the non-moving party: the non-moving party must rebut the motion with facts in the record and cannot rest solely on assertions made in the pleadings, legal memoranda, or oral argument." *Colkitt*, 455 F.3d at 201; FED. R. CIV. P. 56(c)(1)(A) (requiring any party asserting a fact to "cit[e] to particular parts of materials in the record"). Statements of Disputed Facts are not evidence, so a "district court may not rely solely on" them to justify a finding that a dispute of material fact exists. *Doeblers' Pa. Hybrids, Inc. v. Doebler*, 442 F.3d 812, 820 n.8 (3d Cir. 2006), *as amended* (May 5, 2006) (citation omitted).

In applying this standard, "the court must construe the evidence in the light most favorable to the non-moving party and give that party the benefit of all reasonable inferences." *Barton & Pittinos v. Smithkline Beecham Corp.*, 118 F.3d 178, 181 n.3 (3d Cir. 1997) (citing *Meinhardt v.*

*Unisys Corp. (In re Unisys Sav. Plan Litig.)*, 74 F.3d 420, 433 n.10 (3d Cir. 1996). At the summary judgment stage, the Court's role is not to weigh the evidence and determine the ultimate truth of the allegations. *Baloga v. Pittston Area Sch. Dist.*, 927 F.3d 742, 752 (3d Cir. 2019); *see also InterVest, Inc. v. Bloomberg, L.P.*, 340 F.3d 144, 160 (3d Cir. 2003) ("When analyzing the evidence under this summary judgment standard, a court is not to weigh the evidence or make credibility determinations; these are tasks left for the fact-finder." (internal quotation marks omitted)). Instead, the Court's task is to identify and explain the law governing the matter, and then, in light of that law, determine whether there remains a genuine issue of fact for trial. *Id.*

When faced with cross-motions for summary judgment, the standard of review does not change. *See Appelmans v. City of Phila.*, 826 F.2d 214, 216 (3d Cir. 1987). However, if "upon review of cross motions for summary judgment [the Court] find[s] no genuine dispute over material facts, then [the Court] will order judgment to be entered in favor of the party deserving judgment in light of the law and undisputed facts." *Iberia Foods Corp. v. Romeo*, 150 F.3d 298, 302 (3d Cir. 1998).

## IV.    ANALYSIS

### A.  Discriminatory Discharge

Plaintiff brings a claim for discriminatory discharge in violation of the ADA in Count I of his Complaint. Discrimination claims under the ADA, like many other discrimination claims, are governed by the *McDonnell Douglas* burden-shifting framework. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 793 (1973); *see Law v. Garden State Tanning*, 159 F. Supp. 2d 787, 791 n.2 (E.D. Pa. 2001) (holding *McDonnell Douglas* analysis applies to employment discrimination claims under ADA). Under this framework, the plaintiff must first establish a *prima facie* case of discrimination. *Law*, 159 F. Supp. 2d at 791. If the plaintiff makes out a *prima facie* case of

discrimination, the burden shifts to the defendant to "present a legitimate, non-discriminatory reason for the negative employment decision." *Id.* To overcome summary judgment, "the plaintiff must then show that the reason presented by the defendant is pretextual." *Id.*

The Parties bring cross-motions for summary judgment on Plaintiff's disability discriminatory discharge claim. Defendant argues that: (1) Plaintiff cannot establish any element of a *prima facie* case of disability discrimination; (2) Defendant had a legitimate, nondiscriminatory reason for terminating Plaintiff, and (3) Plaintiff cannot establish that Defendant's actions are pretextual. Relying on the termination letter, Plaintiff argues that Defendant discharged him because it "regarded" him as disabled and that his claim is a "direct evidence" case not subject to *McDonnell Douglas*.

### 1. Plaintiff's *Prima facie* Case

To state a *prima facie* case of disability discrimination, the plaintiff must show that "(1) he is a disabled person within the meaning of the ADA; (2) he is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations . . . ; and (3) he has suffered an otherwise adverse employment decision as a result of discrimination." *Gardner v. SEPTA*, 824 F. App'x 100, 105-06 (3d Cir. 2020) (omission in original) (quoting *Taylor v. Phoenixville Sch. Dist.*, 184 F.3d 296, 306 (3d Cir. 1999)). While Plaintiff has established a *prima facie* case and survives Defendant's affirmative motion at this stage, genuine disputes of material fact still remain.

### i. Disabled Person Within Meaning of the ADA

A plaintiff is disabled for purposes of the ADA if he (1) has a "physical or mental impairment that substantially limits one or more" of her "major life activities"; (2) has "a record of such an impairment"; or (3) is "regarded as having such an impairment." *Eshleman v. Patrick*

*Indus., Inc.*, 961 F.3d 242, 245 (3d Cir. 2020) (citing 42 U.S.C. § 12102(1)). The 2008 amendments to the ADA provide that "major life activities include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." 42 U.S.C. § 12102(2)(A). "The question of whether an individual meets the definition of disability under this part should not demand extensive analysis," because the statute is to be construed in favor of the party claiming to be disabled. *Woods v. AstraZeneca Pharms., L.P.*, 659 F. Supp. 3d 512, 532-33, 535 (M.D. Pa. 2023) (citing 29 C.F.R. § 1630.1).

Defendant argues that Plaintiff is not "disabled." Def.'s Mem. L. Supp., at 18 (ECF No. 37). Defendant acknowledges Plaintiff's 2000 and 2009 MRI scans, a physician's note from 2010, and his "brief zoom interaction" with Dr. Morgenstern, but asserts that Plaintiff's testimony demonstrates that he has been able to work full-time and beyond twelve hours per month. *Id.* at 19. Defendant maintains that Plaintiff provided no evidence showing that his low back injury restricts his ability to work or perform major life activities. *Id.* at 21.

Plaintiff counters that Dr. Morgenstern's letter establishes that Plaintiff does suffer from a painful physical impairment, *i.e.*, disc herniation at L3-L4 and disc bulging at L5-S1, as supported by the 2000 and 2009 MRIs. Mem. of L. in Opp'n to Def.'s Mot. for Summ. J. ("Pl.'s Mem. L. Opp'n"), at 4 (ECF No. 40). Dr. Morgenstern explains that the "pain radiates to the left foot accompanied with tingling of the left foot" and is "exacerbated by prolonged standing greater than six hours and lifting." J.A. at 219 (ECF No. 36). He further explains that the pain persists, even after taking naproxen, after working more than a twelve-hour shift. *Id.* Plaintiff also points out that his job with Optum is fully remote and sedentary, unlike his job with Defendant. Pl.'s Mem. L. Opp'n, at 4 (ECF No. 40).

The Court agrees that Plaintiff has pointed to sufficient evidence to show that he is disabled and survive Defendant's summary judgment motion. His low back pain interferes with his ability to stand for extended periods of time, which constitutes a "major life activity." However, Plaintiff has not produced evidence to conclusively establish that Defendant "regarded" him as disabled, as he argues in his affirmative motion. *See* 11 MOORE'S FED. PRAC. - CIV. § 56.40(1)(c) ("When the movant bears the burden of persuasion at trial, the movant must produce evidence that would conclusively support its right to a judgment after trial should the nonmovant fail to rebut the evidence."). To be "regarded as" disabled, Plaintiff had to demonstrate that he was "subjected to an action prohibited under the ADA ***because of*** an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity." *Eshleman*, 961 F.3d at 245 (emphasis added) (citation modified) (quoting 42 U.S.C. § 12102(3)); *see also Gibbs v. City of Pittsburgh*, 989 F.3d 226, 229 (3d Cir. 2021). "An employer regards a person as disabled when it misinterprets information about an employee's limitations to conclude that the employee is incapable of performing his or her job requirements." *Eshleman*, 961 F.3d at 245 (citation modified).

Plaintiff proffers Ms. Green's letter to show that Defendant undoubtedly "regarded" him as disabled. *See* Pl.'s Mem. L. Supp., at 11-12 (ECF No. 35-2). But that is far from showing Defendant discriminatorily discharged Plaintiff "because of an actual or perceived physical," such that "no reasonable jury would be free to disbelieve it." *See* 42 U.S.C. § 12102(3)(A); *Dunkin Donuts Franchising LLC v. Claudia III, LLC*, No. CIV.A. 14-2293, 2015 WL 4243534, at *1 (E.D. Pa. July 14, 2015) (quoting 11 MOORE'S FED. PRAC. - CIV. § 56.40(1)(c)). The very evidence Plaintiff points to could also lead a reasonable jury to conclude Defendant terminated Plaintiff's employment because he could not meet the schedule requirements. J.A. at 224 (ECF No. 36).

Accordingly, neither Party is entitled to summary judgment on the issue of Plaintiff being disabled or "regarded as" disabled.

### ii.    Qualified to Perform Essential Functions

The Parties dispute whether working four or five 6-hour shifts per month constitutes an "essential function" of Plaintiff's job. "A job duty is an 'essential function' when it is 'fundamental' to the position." *Bevan v. Cnty. of Lackawanna*, No. 3:17-CV-0919, 2017 WL 6336595, at *4 (M.D. Pa. Dec. 12, 2017) (citing 29 C.F.R. § 1630.2(n)(1)). A job function can be deemed "essential" because, for example, it is "the reason the position exists is to perform that function," few employees are available to perform the job function, or the function is highly specialized such that the person was hired to fulfill that function. *See Turner v. Hershey Chocolate U.S.*, 440 F.3d 604, 612 (3d Cir. 2006). However, it does not include "marginal" functions. *Id.* (citing 29 C.F.R. § 1630.2(n)(1)).

"Whether a particular function is essential is a factual determination that must be made on a case by case basis based upon all relevant evidence, which should typically be left for the jury to resolve." *Bevan*, 2017 WL 6336595, at *4 (citation modified) (quoting *Turner*, 440 F.3d at 612); *see Ragusa v. Lehigh Univ.*, No. CV 18-3362, 2021 WL 1175153, at *3 (E.D. Pa. Mar. 29, 2021) (collecting cases). Evidence to consider may include: "(i) [t]he employer's judgment as to which functions are essential; (ii) [w]ritten job descriptions prepared before advertising or interviewing applicants . . . ; (iii) [t]he amount of time spent on the job performing the function; (iv) [t]he consequences of not requiring the incumbent to perform the function; (v) [t]he terms of a collective bargaining agreement; (vi) [t]he work experience of past incumbents in the job; and/or (vii) [t]he current work experience of incumbents in similar jobs." *Turner*, 440 F.3d at 612 (quoting 29 C.F.R. § 1630.2(n)(3)).

Neither Plaintiff nor Defendant are entitled to summary judgment on this issue. On one hand, the amended schedule guidelines required Plaintiff to work 24 to 30 hours per month (depending on the number of weekend days per month), and Defendant considers this to be an essential function of Plaintiff's employment. *See* J.A. at 209, 267-69 (ECF No. 36). On the other hand, the employment agreement does not set Plaintiff's hours in stone. J.A. at 194 (ECF No. 36). Rather, it states Plaintiff's ***anticipated*** hours. Defendant amending the required hours during Plaintiff's employment also cuts against the hours requirement being an essential function of his job. J.A. at 209 (ECF No. 36). Moreover, Plaintiff worked that accommodated schedule for his remaining two months with Defendant. Def.'s Br. in Opp'n to Pl.'s Partial Mot. for Summ. J. ("Def.'s Br. Opp'n"), at 8 (ECF No. 42).

### iii.    Terminated as a Result of Discrimination

The Parties also dispute whether Plaintiff's termination was the result of discrimination. To establish causation, "a plaintiff must show that [his] disability was a 'determinative factor' in their employer's decision to terminate [him]." *Smith v. Presidio Networked Sols., Inc.*, No. CV 22-736, 2024 WL 3203314, at *18 (E.D. Pa. June 26, 2024) (citing *Campo v. Mid-Atl. Packaging Specialties, LLC*, 564 F. Supp. 3d 362, 380-81 (E.D. Pa. 2021)). This analysis is "highly context-specific." *Emmell v. Phoenixville Hosp. Co., LLC*, 303 F. Supp. 3d 314, 332 (E.D. Pa. 2018) (quoting *Kachmar v. SunGard Data Sys., Inc.*, 109 F.3d 173, 178 (3d Cir. 1997). Courts consider the "(1) temporal proximity between a protected activity and the adverse employment action, (2) whether there is a pattern of antagonism following protected conduct, and (3) whether the record, taken as a whole, raises an inference of causation." *Smondrowski v. Edgewood Co., Inc.*, No. CV 24-1297, 2025 WL 3678885, at *4–5 (E.D. Pa. Dec. 18, 2025) (quoting *Garcia v. Vertical Screen*, 592 F. Supp. 3d 409, 420 (E.D. Pa. 2022)).

The temporal proximity between Plaintiff submitting his accommodation request and Defendant deciding to terminate his employment was less than 24 hours. J.A. at 222, 302 (ECF No. 36). This "unduly suggestive temporal proximity" gives rise to the inference—viewing the facts in Plaintiff's favor—that Defendant terminated Plaintiff due to his disability. *See Smondrowski*, 2025 WL 3678885, at *4–5 (quoting *Tirk v. Dubrook, Inc.*, 673 F. App'x 238, 241 (3d Cir. 2016)). Defendant's quick decision to discharge Plaintiff, coupled with Ms. Green's use of a smiley face emoji in her email, are enough for Plaintiff to survive Defendant's summary judgment motion. *See* J.A. at 222 (ECF No. 36).

However, Plaintiff does not prevail on his affirmative motion. Plaintiff points to the termination letter to show that he could have only been fired because of his injuries. *See* Pl.'s Mem. L. Supp., at 11-12 (ECF No. 35-2). But viewing inferences in ***Defendant's*** favor this time, it is possible that a reasonable juror could find Defendant terminated Plaintiff so quickly simply because there was no way it could accommodate Plaintiff's two-shifts-per-month request.

## 2. Legitimate, Nondiscriminatory Reason

Because Plaintiff established a *prima facie* case for discriminatory discharge, the burden of production shifts to Defendant to state a "facially legitimate, nondiscriminatory reason for Plaintiff's termination." *Slayton v. Sneaker Villa, Inc.*, No. CV 15-0074, 2017 WL 1048360, at *8 (E.D. Pa. Mar. 20, 2017) (citing *Fuentes v. Perskie*, 32 F.3d 759, 763 (3d Cir. 1994)). This "relatively light" burden is satisfied if Defendant "introduces 'evidence which, taken as true, would permit the conclusion that there was a nondiscriminatory reason for the unfavorable employment decision.'" *Id.* (quoting *Fuentes*, 32 F.3d at 763). "At this stage, the defendant need not prove that

the articulated reason actually motivated its conduct." *Id.* (quoting *Burton v. Teleflex Inc.*, 707 F.3d 417, 426 (3d Cir. 2013).

Defendant has pointed to a legitimate, nondiscriminatory reason for terminating his employment: Plaintiff is unable to meet the schedule requirements. Def.'s Mem. L. Supp., at 25 (ECF No. 37). Accordingly, Defendant has met its burden of production.

### 3. Pretext

Defendant proffered a legitimate, nondiscriminatory reason for Plaintiff's termination, so the burden shifts back to Plaintiff to show it was pretextual. *Slayton*, 2017 WL 1048360, at *9 (citing *Willis v. UPMC Child.'s Hosp. of Pittsburgh*, 808 F.3d 638, 644–45 (3d Cir. 2015)). "[T]he standard for demonstrating pretext 'places a difficult burden on the plaintiff[.]'" *Matos v. Merck & Co.*, 643 F. App'x 187, 191 (3d Cir. 2016) (quoting *Fuentes*, 32 F.3d at 765). To avoid summary judgment, Plaintiff "must point to some evidence from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *Id.* (citation modified) (quoting *Fuentes*, 32 F.3d at 764). He can do this by "pointing to weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action." *Id.* (citation modified) (quoting *Fuentes*, 32 F.3d at 765).

Despite facing a "difficult burden," Plaintiff opted not to address pretext at all. Rather, Plaintiff hangs his hat on characterizing his claim as a "direct evidence" case and argues pretext is irrelevant. *See* Pl.'s Mem. L. Supp., at 18 (ECF No. 35-2); Pl.'s Mem. L. Opp'n, at 11-13 (ECF No. 40). In his affirmative motion, Plaintiff insists that Ms. Green's letter is "direct evidence" of Defendant's discriminatory animus. Pl.'s Mem. L. Supp., at 17 (ECF No. 35-2). But viewing Ms.

14

Green's letter in the light most favorable to the nonmovant (*i.e.*, Defendant), Plaintiff was fired because he would "be unable to meet the schedule requirements." *See* J.A. at 224 (ECF No. 36). Indeed, the plain language of her letter says so. *Id.* And despite having a second chance to address pretext in his opposition brief, Plaintiff stopped short at the second stage of *McDonnell Douglas*. *See* Pl.'s Mem. L. Opp'n, at 11-13 (ECF No. 40).

Plaintiff bore the burden of establishing pretext. Because Defendant pointed to a legitimate, nondiscriminatory reason for terminating Plaintiff's employment (*i.e.*, he could not meet the schedule requirements) and Plaintiff failed to address pretext at all, summary judgment is **GRANTED** for Defendant on Plaintiff's discriminatory discharge claim.

### B. Retaliation

Plaintiff also brings an ADA retaliation claim in Count II of his Complaint, and the Parties filed cross-motions on this claim. The *McDonnell Douglas* burden-shifting framework applies to this claim as well. *See Hanafy v. Hill Int'l, Inc.*, 669 F. Supp. 3d 419, 432 (E.D. Pa. 2023). By now, the framework is familiar: Plaintiff must first establish a *prima facie* case for retaliation, Defendant must then offer a legitimate non-discriminatory justification for termination Plaintiff, and finally, Plaintiff must show that Defendant's proffered justification is merely pretext. *See id.* at 433. A claim for retaliation requires Plaintiff to "show that (1) he engaged in a protected activity (such as . . . requesting a reasonable accommodation under the ADA . . . ), (2) he suffered an adverse employment decision, and (3) there was a causal connection between the protected activity and the adverse employment decision." *Id.* at 438.

Defendant collapses the "causation" and "legitimate non-discriminatory justification" inquiries by arguing that it established a legitimate, non-retaliatory reason for terminating Plaintiff's employment. Def.'s Mem. L. Supp., at 28 (ECF No. 37); Def.'s Br. Opp'n, at 8-11 (ECF

No. 42). While Defendant is not entitled to summary judgment based on Plaintiff failing to state a *prima facie* case,[2] Defendant has pointed to a legitimate reason for terminating Plaintiff's employment. Specifically, Defendant terminated Plaintiff because he could not meet the schedule requirements. Def.'s Mem. L. Supp., at 27 (ECF No. 37); Def.'s Br. Opp'n, at 9 (ECF No. 42).

But once again, Plaintiff did not establish pretext. Rather than explain how Defendant's purported legitimate non-discriminatory justification constitutes pretext, Plaintiff focused on arguing why he does not have to establish pretext. Pl.'s Mem. L. Supp., at 8-9 (ECF No. 35-2). Plaintiff insists that this is a "direct evidence" case because Defendant discharged him based on Ms. Green's review of the letter. *See id.* at 6-9.

But Ms. Green's letter is not the smoking gun evidence that Plaintiff thinks it is. The very letter that Plaintiff submitted to Defendant states that he could not work more than two 6-hour shifts per month. J.A. at 221 (ECF No. 36). Ms. Green was not jumping to conclusions when she said that Plaintiff could not meet the schedule requirements. *Id.* at 224. Plaintiff's own letter said so. Accordingly, Ms. Green's letter to Plaintiff is not unassailable "direct evidence" of retaliation.

Because Defendant stated a legitimate, non-discriminatory justification for terminating Plaintiff's employment and Plaintiff declined to address pretext at all, summary judgment is **GRANTED** for Defendant on Plaintiff's retaliation claim.

---

[2] "When the temporal proximity between the protected activity and adverse action is unduly suggestive, this is sufficient standing alone to create an inference of causality and defeat summary judgment." *Lichtenstein v. Univ. of Pittsburgh Med. Ctr.*, 691 F.3d 294, 307 (3d Cir. 2012) (citation modified) (quoting *LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n,* 503 F.3d 217, 232 (3d Cir. 2007)). That is the case here. Defendant decided to terminate Plaintiff's employment within 24 hours' notice of his accommodation request.

### C.  Failure to Accommodate (Count III)[3]

Plaintiff also brings an ADA failure-to-accommodate claim in Count III of his Complaint. "Under the ADA, an employer has a duty to provide reasonable accommodations to people with disabilities." *Lewis v. Univ. of Pa.*, 779 F. App'x 920, 923 (3d Cir. 2019) (citing *Colwell v. Rite Aid Corp.*, 602 F.3d 495, 504-05 (3d Cir. 2010)). Once an employer knows its employee wants accommodations for a disability, "the burden shifts to the employer to engage in the accommodation process." *Campo*, 564 F. Supp. 3d at 389. An employer breaches its duty to provide reasonable accommodations if it "fail[s] to provide an accommodation that is reasonable" or "fail[s] to engage in a good faith interactive process to identify accommodations." *Parrish v. Cnty. of Del.*, No. CV 22-4552, 2024 WL 3295585, at *5 (E.D. Pa. July 3, 2024) (quoting *Lewis*, 779 F. App'x at 923).

To succeed on a failure-to-accommodate claim for failure to engage in the interactive process, Plaintiff must prove: (1) Defendant knew of Plaintiff's disability; (2) Plaintiff "requested accommodations or assistance for her disability;" (3) Defendant failed to "make a good faith effort to assist [Plaintiff] in seeking such accommodations or assistance; and (4) [Plaintiff] could have been reasonably accommodated but for [Defendant's] lack of good faith." *Arana v. Temple Univ. Health Sys.*, No. CV 17-525, 2018 WL 2063600, at *5 (E.D. Pa. May 3, 2018) (citing *Capps v. Mondelez Glob., LLC*, 847 F.3d 144, 157 (3d Cir. 2017); *Taylor*, 184 F.3d at 319-20) (other

---

[3] In Defendant's brief supporting its affirmative motion, Defendant's failure-to-accommodate arguments fall within the section arguing that Plaintiff's discrimination claim fails. *See* Def.'s Mem. L. Supp., at 10-17 (ECF No. 37). To the best of the Court's understanding, this should have been a standalone section of the brief. *See id.* at 6 ("As it relates to his failure to accommodate claim, Patient First engaged in the interactive process questioning as to the duration of Dr. Nickischer's limitation but could not accommodate Dr. Nickischer's request without suffering undue hardship, nor was it required to under established law."). Accordingly, the Court will treat it as such.

citations omitted). Defendant claims that: (1) Plaintiff's accommodation request is unreasonable; (2) it had no obligation to make a good-faith effort to assist Plaintiff, or alternatively, it did make such an effort; and (3) the requested accommodation would cause undue hardship to Defendant.[4] *See* Def.'s Mem. L. Supp., at 11-17 (ECF No. 37).

Start with the accommodation being "unreasonable." Defendant maintains that granting this request would "remove the essential function of the part-time physician role, which included working four or five weekend shifts per month." *Id.* at 12. This accommodation was unreasonable, Defendant argues, because it purportedly would require other physicians to regularly exceed their hours. *Id.* at 13.

But Congress already recognized that job restructuring, modified work schedules, and reassignment to a vacant position all can constitute a "reasonable accommodation" under the ADA. *See Colwell*, 602 F.3d at 505) (quoting 42 U.S.C. § 12111(9)(B) (2005)) (holding "there is nothing inherently unreasonable" about "requiring an employer to furnish an otherwise qualified disabled employee with assistance related to her ability to get to work," given Congress's stated views on what can qualify as a reasonable accommodation). Moreover, Defendant hinges its argument on the hours requirement being an "essential function," which is a question of fact for the jury. *Bevan*, 2017 WL 6336595, at *4 (citation modified) (quoting *Turner*, 440 F.3d at 612); *see Ragusa*, 2021 WL 1175153, at *3 (collecting cases). Accordingly, a jury could find that Plaintiff's permanently modified schedule request was reasonable.

Next, Defendant insists that it did not have to participate in the interactive process because no reasonable accommodation exists. *See* Def.'s Mem. L. Supp., at 13 (ECF No. 37). Alternatively,

---

[4] To the extent that Defendant does challenge Plaintiff's disability, the Court has already addressed that, viewing the facts in the light most favorable to Plaintiff, Plaintiff has introduced evidence that he is disabled.

Defendant asserts that inquiring whether the accommodations would be temporary or permanent qualified as "engaging in the interactive process." *See id.* at 13-14.

Once Defendant knew of Plaintiff's disability and desire for accommodations, Defendant was obligated to engage in the accommodation process and "make a good-faith effort to seek accommodations." *See Campo*, 564 F. Supp. 3d at 389 (quoting *Taylor*, 184 F.3d at 315, 317) (other citations omitted). The regulations explain that "it may be necessary for the covered entity to initiate an informal, interactive process with the" employee to "determine the appropriate reasonable accommodation." *Doe v. Triangle Doughnuts, LLC*, 472 F. Supp. 3d 115, 141 (E.D. Pa. 2020) (quoting 29 C.F.R. § 1630.2(o)(3)). "This process should identify the precise limitations resulting from the disability and potential reasonable accommodations that could overcome those limitations." *Id.* (quoting 29 C.F.R. § 1630.2(o)(3)). "An employer fails to engage in the interactive process when it knows of the employee's disability and desire for accommodations but nonetheless offers no accommodations or assistance in finding them and simply sits back and continues to document the employee's failures." *Campo*, 564 F. Supp. 3d at 389 (citation modified) (quoting *Taylor*, 184 F.3d at 315).

Here, there is a genuine dispute as to whether Defendant made a good-faith effort. Not even 24 hours after Plaintiff submitted his accommodation request, Ms. Green wrote: "I've discussed with Steve [McCoy] and Eddie [Sowers]. I'll be sending him a notice letter next week," followed by a smiley face emoji. J.A. at 222, 302 (ECF No. 36). Indeed, the timing of Ms. Green's email exchange with Ms. Guldenschuh, coupled with Ms. Green's lack of communication with the Easton clinic, raises a factual question as to whether Defendant investigated Plaintiff's accommodation request at all. *Id.* at 222, 302, 317-18; *see Parrish*, 2024 WL 3295585, at *7 (denying summary judgment where employer did not investigate alternative accommodations once

it determined employee could not work mandatory overtime hours). Ms. Green's use of a smiley face emoji when discussing Plaintiff's termination further muddies Defendant's claim of good faith. This dispute over good faith alone makes summary judgment is inappropriate. *See Parrish*, 2024 WL 3295585, at *6 ("[W]here there is a genuine dispute about whether the employer acted in good faith, summary judgment will typically be precluded." (alteration in original) (quoting *Lewis*, 779 F. App'x. at 923)).

Lastly, Defendant argues that Plaintiff's accommodation request would impose an undue hardship on Defendant. Def.'s Mem. L. Supp., at 16 (ECF No. 37). Claiming a requested accommodation would be an "undue hardship" on the entity's business operations is a defense to a discrimination charge.[5] *Dinger v. Bryn Mawr Tr. Co.*, No. CV 19-2324-WB, 2022 WL 6746260,

---

[5] "The term 'undue hardship' means an action requiring significant difficulty or expense" in light of several factors:

    i. the nature and cost of the accommodation needed under this chapter;

    ii. the overall financial resources of the facility or facilities involved in the provision of the reasonable accommodation; the number of persons employed at such facility; the effect on expenses and resources, or the impact otherwise of such accommodation upon the operation of the facility;

    iii. the overall financial resources of the covered entity; the overall size of the business of a covered entity with respect to the number of its employees; the number, type, and location of its facilities;

    iv. the type of operation or operations of the covered entity, including the composition, structure, and functions of the workforce of such entity; the geographic separateness, administrative, or fiscal relationship of the facility or facilities in question to the covered entity.

42 U.S.C. § 12111(10)(A)-(B).

at *9 (E.D. Pa. Oct. 11, 2022) (quoting 29 C.F.R. § 1630.15(d)). Defendant asserts that providing Plaintiff a permanently reduced schedule would require other physicians to work more shifts than they agreed to work, and finding employees to take on additional responsibilities would have been difficult. Def.'s Mem. L. Supp., at 16 (ECF No. 37). But Ms. Green's testimony is the sole factual basis of those arguments. That would require the Court to take Ms. Green at her word. And, as Plaintiff has countered, Ms. Green did not confer with the Easton clinic before coming to that determination. Pl.'s Mem. L. Opp'n, at 18 (ECF No. 40). The record also shows that Defendant offered a "PRN" position at 12 weekend hours per month for months with eight weekend days, or 18 weekend hours per month for months with nine or ten weekend days. *See* J.A. at 209 (ECF No. 36). A jury could infer that it would not be, in fact, an undue hardship for Defendant to offer the same hours to Plaintiff.

There is a genuine factual dispute as to Plaintiff's failure-to-accommodate claim. The Court therefore **DENIES** Defendant's motion.

### D.  Punitive Damages

Plaintiff seeks punitive damages for all of his claims. The only claim that survives summary judgment is his failure-to-accommodate claim, so the Court will only consider this claim.

"Punitive damages are available under the ADA when the complaining party demonstrates that the respondent engaged in a discriminatory practice with malice or with reckless indifference." *Gagliardo v. Connaught Lab'ys, Inc.*, 311 F.3d 565, 573 (3d Cir. 2002) (citation modified) (quoting 42 U.S.C. § 1981a(b)(1)) The "employer must at least discriminate in the face of a perceived risk that its actions will violate federal law." *Id.* (quoting *Kolstad v. Am. Dental Ass'n*, 527 U.S. 526, 535-36 (1999)) (holding employee produced sufficient evidence for punitive

damages where employer knew she had Multiple Sclerosis, employee requested accommodations on multiple occasions, and employer refused to act).

At this juncture, the Court declines to dismiss Plaintiff's request for punitive damages. There is a factual dispute as to whether Defendant acted with malice or reckless indifference. Again, Defendant was not only quick to fire Plaintiff upon receiving his accommodation request for his low back pain, Ms. Green's email can be construed as she was happy to do so.

## V.    CONCLUSION

The Court finds that no reasonable fact finder could reach a judgment for Plaintiff as to his discriminatory discharge and retaliation claims. However, Plaintiff has raised a genuine dispute of material fact for his failure-to-accommodate claim.

Accordingly, the Court **GRANTS** summary judgment for Defendant on Plaintiff's claims for discriminatory discharge and retaliation claims. The Court **DENIES** summary judgment on Plaintiff's failure-to-accommodate claim. An appropriate Order follows.

BY THE COURT:


 /s/ John M. Gallagher
JOHN M. GALLAGHER
United States District Court Judge

22